**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0001056
30-APR-2014
08:33 AM**

NO. CAAP-12-0001056

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JENNIFER H. STUMP, Plaintiff-Appellee, v.
DARYL MARK STUMP, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-M NO. 10-1-6375)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, Fujise and Leonard, JJ.)

Defendant-Appellant Daryl Mark Stump (**Husband**) appeals from the following orders by the Family Court of the First Circuit (**Family Court**): (1) Order Re: Defendant Daryl Mark Stump's Motion to Modify Judgment Pursuant to [Hawaii Revised Statutes (**HRS**)] HRS 580-47 Filed July 3, 2012, entered on October 29, 2012; and (2) Order Re: Motion to Modify Judgment Pursuant to HRS 580-47, entered on November 2, 2012.[1]

I.   **Background Facts**

Husband and Plaintiff-Appellee Jennifer H. Stump (**Wife**) were married on June 9, 1990 in Shippensburg, Pennsylvania. The parties have three children together, LS, MS, and DS. Husband is a Personnel Specialist with the United States Army. Husband was

---

[1]   The Honorable Catherine H. Remigio and the Honorable Nancy Ryan presided, each during different parts of the proceedings.

stationed in Hawai'i, and he brought the family over in May 2004; however, Husband left Hawai'i approximately four years later because of military orders transferring him to Virginia. Wife and their three children, though, remained in Wahiawa, Hawai'i. Wife cited several reasons for staying in Hawai'i, including LS being "able to stay in the same school," her work at Hale Kula, and DS being able to "graduate at the same high school she started as a Freshman."

On October 21, 2009, the parties were divorced pursuant to a Final Decree of Divorce entered in the City of Alexandria Circuit Court, State of Virginia. However, the Virginia court did not address any issues relating to child custody, support, or property division. Wife then filed a Motion for Post Decree Relief in the Family Court, on November 3, 2010, seeking custody, child support, alimony, and division of the marital estate. On September 15, 2011, Husband's then-fiancée gave birth to a child, PMS. On October 26, 2011, the Family Court entered an Amended Divorce Decree granting sole legal and physical custody of the three children (LS, MS, and DS) to Wife, with reasonable visitation rights for Husband, and awarding Wife alimony and child support from Husband. Husband did not appeal the Amended Divorce Decree.

Eight months later, on July 3, 2012, Husband filed a Motion to Modify Judgment Pursuant to HRS § 580-47,[2] claiming

---

[2] HRS § 580-47 (2006 & Supp. 2013) states, in relevant part, the following:

**§ 580-47 Support orders; division of property.**

(a) Upon granting a divorce, or thereafter if,

(continued...)

[2](...continued)
in addition to the powers granted in subsections (c) and (d), jurisdiction of those matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists, the court may make any further orders as shall appear just and equitable (1) compelling the parties or either of them to provide for the support, maintenance, and education of the children of the parties; (2) compelling either party to provide for the support and maintenance of the other party; (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate; and (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate, and the attorney's fees, costs, and expenses incurred by each party by reason of the divorce. . . .

(b) An order as to the custody, management, and division of property and as to the payment of debts and the attorney's fees, costs and expenses incurred in the divorce shall be final and conclusive as to both parties subject only to appeal as in civil cases. The court shall at all times, including during the pendency of any appeal, have the power to grant any and all orders that may be necessary to protect and provide for the support and maintenance of the parties and any children of the parties to secure justice, to compel either party to advance reasonable amounts for the expenses of the appeal including attorney's fees to be incurred by the other party, and to amend and revise such orders from time to time.

(c) No order entered under the authority of subsection (a) or entered thereafter revising so much of such an order as provides for the support, maintenance, and education of the children of the parties shall impair the power of the court from time to time to revise its orders providing for the support, maintenance, and education of the children of the parties upon a showing of a change in the circumstances of either party or any child of the parties since the entry of any prior order relating to the support, maintenance, and education. . . .

(d) Upon the motion of either party supported by an affidavit setting forth in particular a material change in the physical or financial circumstances of either party, or upon a showing of other good cause, the moving party, in the discretion of the court, and upon adequate notice to the other party, may be granted a hearing. . . . The court, upon such hearing, for good cause shown may amend or revise any order and shall consider all proper circumstances in determining the amount of the allowance, if any, which shall thereafter be ordered.

(e) The responsible parent or the custodial parent shall have a right to petition the family court or the child support enforcement agency not more than once every three years for review and adjustment of the child support order without having to show a

(continued...)

that exceptional circumstances and good cause existed to modify the terms of the Amended Divorce Decree. In particular, Husband argued that he had another child to support (PS), DS was in college and no longer living with Wife, and Husband's relationship with his other two minor children (LS and MS) was being harmed by him not being able to contact them regularly. Husband sought: (1) a reduction in child support due to the birth of PS; (2) sole physical custody of LS; (3) joint legal custody of MS, with a specific visitation schedule; (4) termination of child support for DS, as she was attending college on the mainland; (5) a visitation schedule for LS and MS; and (6) a tax dependency exemption for LS and alternating yearly for MS. Wife opposed the motion in its entirety.

On October 3, 2012, a hearing was held before Judge Nancy Ryan. The Family Court ordered Wife to pay her adult daughter all of the court-ordered child support that she received each month on her daughter's behalf and to provide proof of payment. The Family Court also ordered Wife to submit proof of daughter's full-time enrollment in an accredited college to Husband. Additionally, it ordered both Husband and Wife to file memoranda regarding child support and changed circumstances. The issue of tax exemption was reserved pending the court's decision on custody, and the custody issue was continued for a further

---

[2](...continued)
> change in circumstances. The responsible or custodial parent shall not be precluded from petitioning the family court or the child support enforcement agency for review and adjustment more than once in any three-year period if the second or subsequent request is supported by proof of a substantial or material change of circumstances.
> . . . .

hearing on November 2, 2012.

On October 29, 2012, the Family Court issued an Order Re: Defendant Daryl Mark Stump's Motion to Modify Judgment Pursuant to HRS 580-47 Filed July 3, 2012. It noted that there was a "material change in circumstances justifying a review of [Husband's] child support payments" because Husband had a fourth child after evidence was taken on July 22, 2011. However, the Family Court also found that there was no material change in circumstances to warrant reopening the issue of child custody, except for the separate issue of visitation. A trial was scheduled to be held on November 2, 2012, limited to the issues of child support and visitation.

On November 2, 2012, the Family Court issued an Order Re: Motion to Modify Judgment Pursuant to HRS 580-47. The Order noted that the court clerk made three calls for Husband and his attorney during a hearing in front of Judge Catherine H. Remigio, but because they were not present and did not appear by 11:20 a.m. (for a hearing that was supposed to have started at 11:00 a.m.), Husband was defaulted, and the motion regarding child support and visitation was denied. On November 30, 2012, Husband timely filed a Notice of Appeal.

On January 28, 2013, the Family Court entered Findings of Fact (**FOFs**) and Conclusions of Law (**COLs**). In the COLs, the Family Court concluded, *inter alia*: (1) that a moving party must show a substantial change in relevant circumstances in order to modify an existing child custody order; (2) that Husband had to show this substantial change; (3) that Husband failed to show a substantial change warranting custodial modification; and (4)

5

that Husband's tax exemption request should be denied. The court also concluded that: for existing child support order modification, the moving party must show a substantial change in relevant circumstances, unless at least three years have elapsed since the prior child support order; the birth of Husband's fourth child, PMS, was a substantial change in relevant circumstances justifying child support payment review; a trial was scheduled for November 2, 2012 regarding the issues of child support and visitation; and the court denied Husband's modification motion regarding child support and visitation because Husband and his attorney failed to appear at the trial, thus warranting a default against Husband.

## II. Points of Error on Appeal

Husband raises the following points of error on appeal:

(1) the Family Court erred in its application of the statutory requirements for a change in custody;

(2) the Family Court erred in requiring a material change in circumstances in the context of a post-hearing motion;

(3) the Family Court denied due process to Husband by disallowing his telephonic testimony at the continuation of the hearing on his Motion to Modify;

(4) the Family Court's FOFs are clearly erroneous; and

(5) the Family Court's COLs are erroneous.

## III. Standards of Review

The Hawaiʻi Supreme Court has stated the following regarding decisions of the Family Court:

> Generally, the family court possesses wide discretion in making its decisions and those decision will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal

6

> unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (citation omitted).

> The interpretation of a statute is a question of law reviewable *de novo*. Furthermore, our statutory construction is guided by established rules[.] When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose. This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.

In re Doe, 95 Hawai'i 183, 190-91, 20 P.3d 616, 623-24 (2001) (citations, internal quotation marks, ellipses, and original brackets omitted; format altered).

A "family court's determination of what is or is not in a child's best interests is reviewed on appeal for clear error." Id. at 190, 20 P.3d at 623 (citations omitted). Additionally,

> the concept of the best interests of the child is one that is without any measuring rod, relying on the wisdom and discretion of the family court. . . . [W]e note that the court may look to the past and present conditions of the home and natural parents so as to gain insights into the quality of care the child may reasonably be expected to receive in the future. Other factors for consideration may include the child's own desires and his emotional and physical needs. The court is given much leeway in its examination of reports concerning the child's care, custody and welfare, and its conclusion, if supported by the record and not clearly erroneous, must stand on appeal.

Woodruff v. Keale, 64 Haw. 85, 99, 637 P.2d 760, 769 (1981) (citations and internal quotation marks omitted).

Questions of constitutional law are reviewed *de novo* under the right/wrong standard. In re Guardianship of Carlsmith, 113 Hawai'i 236, 239, 151 P.3d 717, 720 (2007). Thus, an appellate court must "exercise[] its own independent

constitutional judgment based on the facts of the case." Id.

> The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. On the other hand, the family court's COLs are reviewed on appeal de novo, under the right/wrong standard. COLs, consequently, are not binding upon an appellate court and are freely reviewable for their correctness.

Kakinami v. Kakinami, 127 Hawai'i 126, 136, 276 P.3d 695, 705 (2012) (citations and brackets omitted; format altered).

"[I]t is well settled that an appellate court will not pass upon issues dependent upon credibility of witnesses and the weight of the evidence; this is the province of the trial judge." Booth v. Booth, 90 Hawai'i 413, 416, 978 P.2d 851, 854 (1999) (citations, internal quotation marks, and brackets omitted).

Hawaii Rules of Evidence (**HRE**) Rule 103(a) provides, in relevant part, that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Schiller v. Schiller, 120 Hawai'i 283, 288, 205 P.3d 548, 553 (App. 2009) (internal quotation marks omitted).

## IV. Discussion

### A. The Family Court's Custody Determination

Husband argues that the Family Court erred in its application of the statutory requirements for a change in custody, stating that "[t]here was no submittal of any kind regarding the best interests of the children, and no reason for an award of sole physical or legal custody to [Wife]." He

asserts that this was "a departure from the statutory guidelines and an abuse of discretion." He also argues that he did not need to show a material change in circumstances in order to modify the child custody order here because he was challenging only "'the original custody determination in the context of a post-hearing motion'" (namely, his Motion to Modify Judgment).

HRS § 580-47(b) states that "[a]n order as to the custody, management, and division of property and as to the payment of debts and the attorney's fees, costs and expenses incurred in the divorce shall be final and conclusive as to both parties subject only to appeal as in civil cases." The Hawai'i Rules of Appellate Procedure (**HRAP**) require that a notice of appeal be filed within 30 days of the judgment or order. See HRAP Rule 4(a)(1) ("When a civil appeal is permitted by law, the notice of appeal shall be filed within 30 days after entry of the judgment or appealable order."). Thus, Husband had 30 days to appeal the Family Court's October 26, 2011 custody determination to attempt to remedy any perceived non-compliance with the applicable law regarding the best interests of the child.[3]

---

[3] HRS § 571-46 (Supp. 2013) governs, *inter alia*, the criteria for awarding custody, and it states, in relevant part, the following:

**§ 571-46 Criteria and procedure in awarding custody and visitation; best interest of the child.**

(a) In actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, at the final hearing, or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper. In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:

    (1)    Custody should be awarded to either parent
           or to both parents according to the best
           interests of the child, and the court also

(continued...)

Husband did not appeal the October 26, 2011 Amended Divorce Decree, and he instead (over 6 months later, on July 3, 2012) filed a Motion to Modify Judgment Pursuant to HRS § 580-47. Therefore, with regard to the issue of whether the Family Court properly considered the "best interests of the children" in its original custody determination, Husband's objection is too late and cannot be sustained on appeal.

B.     **The Family Court's Application of the Material Change of Circumstances Test**

Husband contends that the Family Court erred when it applied the "material change in circumstances" test to his motion to modify judgment.  He argues that the Family Court erred in failing to apply Hawai'i Family Court Rules (**HFCR**) Rule 60(b)[4]

---

[3](...continued)
> may consider frequent, continuing, and meaningful contact of each parent with the child unless the court finds that a parent is unable to act in the best interest of the child;

. . . .

[4]     HFCR Rule 60(b) states the following:

**Rule 60.   Relief from judgment or order.**

. . . .

> (b) *Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud.* On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made

(continued...)

standards to his motion, as well as failing to consider the best interests of the children standard.

The Hawai'i Intermediate Court of Appeals (**ICA**) has held "[t]hat a person seeking a change of custody must show a material change of circumstances since the previous custody order, _and_ must show that such a change of custody is in the best interest of the child." Nadeau v. Nadeau, 10 Haw. App. 111, 121, 861 P.2d 754, 759 (1993) (emphasis added); see Turoff v. Turoff, 56 Haw. 51, 55, 527 P.2d 1275, 1278 (1974) (explaining that the "question is whether substantial change has occurred since the initial Decision and Order requiring modification or change in the award of custody of the minor child"); In re Guardianship of Doe, 93 Hawai'i 374, 388, 4 P.3d 508, 522 (App. 2000) (stating that "[a] person seeking a change in visitation must show a material change in circumstances since the previous visitation order" (citation omitted)). The Hawai'i Supreme Court also has distinguished requests for "modification in custody" (where the "material change of circumstances" rule would apply) from those "challenging the original custody determination in the context of a post-hearing motion" (where the rule does not apply). See Doe v. Doe, 98 Hawai'i 144, 153, 44 P.3d 1085, 1094 (2002).

In the present case, Husband urges this court to

---

[4](...continued)
within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceedings was entered or taken. For reasons (1) and (3) the averments in the motion shall be made in compliance with Rule 9(b) of these rules. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.

consider his request in the latter category, stating that the Family Court "erred in requiring that [he] prove a material change in circumstances in the context of his Motion to Modify Judgment, which should have been considered under HRFC [sic] Rule 60(b)." First, we note that Husband's post-decree Motion to Modify Judgment only sought relief under HRS § 580-47, and not based on HFCR Rule 60(b). Husband fails to cite to any authority that required the Family Court to *sua sponte* consider his motion for relief under HRS § 580-47 as a HFCR Rule 60(b) motion. In fact, the ICA held, in De Mello v. De Mello, that "[a] party who does not file a motion for relief under Rule 60(b) . . . may not on appeal complain of the failure to award her relief under Rule 60(b)." 3 Haw. App. 165, 168, 646 P.2d 409, 411-12 (1982) (explaining that because the party did not make a Rule 60(b) motion, instead choosing "to rely solely on her erroneous assertion that the family court retained jurisdiction under HRS [§] 580-47," she was precluded from complaining on appeal "of the failure to award her relief under Rule 60(b)"). Thus, the Family Court did not err in treating Husband's motion as a motion for a change in custody, as stated in the motion, and Husband was required to show a material change of circumstances since the original custody determination.

As stated in the Family Court's unchallenged findings (8&9), Husband's arguments in favor of a change in custody were, in sum: (1) LS "should live with him for the next two to three years so they can reestablish their relationship and he can then fully enjoy the benefits and burdens of parenting his son and his son can enjoy the benefits and burdens of living with his father

12

again," and (2) as to MS, Husband "rarely gets to speak to her and wants to have a meaningful relationship" with her. Weighing both parents' affidavits and arguments, the Family Court concluded that Husband "failed to show a substantial change in relevant circumstances" as to warrant a trial on the modification of custody.

On appeal, Husband does not challenge these findings or the conclusion that there was no material change in circumstances since the prior custody order. Instead, as discussed above, he argues that the Family Court erred in requiring him to bring forward evidence of a material change in circumstances. Having already rejected Father's argument that he did not bear the burden on establishing a material change in circumstances, we further conclude that there is no evidence in the record, argument presented, or legal authority supporting Father's contention that we should vacate the Family Court's conclusion that he failed to show a substantial change in circumstances warranting a modification of the existing custody order. As "material change in circumstances" and "best interests of the child" must both be established for a change in custody, we need not address Husband's arguments regarding the latter issue.

**C.** **The Family Court's Refusal of Husband's Telephonic Testimony at the Continuation Hearing for Husband's Motion to Modify**

Husband argues that the Family Court denied him due process by disallowing his telephonic testimony at the continuation of the hearing on his Motion to Modify, on November 2, 2012. He argues that he was denied a fundamental liberty interest with regard to the care and control of his

13

children and that the Family Court did not indicate that he would be disallowed from participating by telephone.

There is no question that parents in Hawai'i "have a substantive liberty interest in the care, custody, and control of their children protected by the due process clause of article 1, section 5 of the Hawai'i Constitution."[5] Hamilton ex rel. Lethem v. Lethem, 126 Hawai'i 294, 302, 270 P.3d 1024, 1032 (2012) (citing In re Doe, 99 Hawai'i 522, 533, 57 P.3d 447, 458 (2002)). The existence of this liberty interest does not guarantee a particular outcome regarding custody determinations. See Fisher v. Fisher, 111 Hawai'i 41, 47, 137 P.3d 355, 361 (2006) (showing that "the child's best interests" govern custody determinations, despite considerations about parental rights). Due process also requires that parents be afforded "notice and an opportunity to be heard at a meaningful time and in a meaningful manner" before their significant parental rights are denied. See In re Doe, 99 Hawai'i at 533, 57 P.3d at 458; State v. Bani, 97 Hawai'i 285, 293, 36 P.3d 1255, 1263 (2001) (citations omitted).

In the present case, it appears that Husband had notice of and the opportunity to attend the November 2, 2012 Family Court hearing. He was represented by counsel, and there is no motion or other indication in the record that, in advance of the

_____

[5] The due process clause of article 1, section 5 of the Hawai'i Constitution states the following: "No person shall be deprived of life, liberty or property without due process of law[.]" Substantive due process involves the protection of "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty[.]" Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (citations and internal quotation marks omitted). Procedural due process involves the protections of "notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant liberty interest." State v. Bani, 97 Hawai'i 285, 293, 36 P.3d 1255, 1263 (2001) (citations omitted).

hearing, he asked the court to allow him to testify telephonically. His attorney failed to make a timely appearance at the hearing, even after the matter was called a second time. As he was represented by counsel, who was not present, it is unclear to this court whether or how Husband proposed to give testimony, or whether Husband merely wished to make arguments on his own behalf, in light of his counsel's absence. No motion for reconsideration was made, based on excusable neglect by counsel or otherwise, explaining counsel's lack of appearance and/or the lack of a prior request to take testimony telephonically. Husband provides no pertinent authority for the proposition that the Family Court was required to allow him to appear via telephone, without his counsel of record and without a timely motion, aside from general propositions regarding due process.

There are situations in which Hawaiʻi courts have ruled that a family court violated a party's due process rights by denying them the opportunity to participate telephonically; yet, those situations are distinguishable from the present one. In In re T.H., the ICA ruled that an incarcerated father was deprived of his due process right to participate by telephone at a hearing. 112 Hawaiʻi 331, 335, 145 P.3d 874, 878 (App. 2006). However, In re T.H. is distinguishable from the present one because it involved the complete termination of parental rights, which is clearly more significant to parental rights than the present case, where the hearing involved a proposed modification to the parental visitation schedule, and the incarcerated father's counsel was present at the hearing. Id. Similarly, in the case of Stomber v. Stomber, the ICA ruled that the family

15

court had denied a father his due process rights when it initially advised him that he would be permitted to appear at a hearing by telephone, but then reversed its decision on the day of the hearing without giving him any reasonable opportunity to appear in person. Stomber v. Stomber, No. 29064 (App. Aug. 27, 2009) (unpublished summary disposition). Again, this is distinguishable from the present case where there was no prior request for permission to appear telephonically, and therefore no procedures in place to maintain the integrity of the proceedings, and a represented party was apparently seeking to appear on his own behalf, and to give (presumably sworn) testimony on his own behalf without the aid of his attorney.

Trial courts, in conjunction with their inherent judicial powers, must be given significant discretion to control the courtroom and the litigation process as a whole. See State v. Sakamoto, 101 Hawai'i 409, 415, 70 P.3d 635, 641 (2003) (Acoba, J., concurring) (explaining that "courts have inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them" (citations and internal quotation marks omitted)); see also 98 C.J.S. Witnesses § 448 (West 2014) (stating that "[t]he manner or mode in which testimony of a witness is to be given is largely within the discretion of the trial court"). Affording trial courts discretion in this regard also reflects cognizance on the part of appellate courts about the real concerns that trial courts may have over the use of telephonic testimony or appearances that are not pre-planned and subject to reasonable limitations and/or protections. See Eric Croft, Telephonic

16

Testimony in Criminal and Civil Trials, 14 HASTINGS COMM. & ENT. L.J. 107, 117-18 (1991) (explaining common areas of judicial concern over telephonic testimony, such as the lack of control and the inability to see the witness to discern credibility). Thus, for the foregoing reasons, under the circumstances presented by the record in this case, the Family Court did not err regarding the telephonic testimony issue.

**D.    The Family Court's Findings of Fact**

Husband contends that the Family Court's FOFs are clearly erroneous, challenging FOFs 2, 4, 21, and 28 and arguing that "they do not reflect the factual allegations or testimony by the parties."

Husband challenges the part of FOF 2 stating the following:  "In or about 2009, Father who had been stationed in Hawaii was re-assigned to Virginia."  Husband points to Wife's statement that the parties were separated in May 2008, as well as the fact that the Family Court found that Husband was a Hawai'i resident from 2004 to 2008.  However, these facts do not contradict the Family Court's FOF 2 because the date of the couple's separation was not necessarily the same date as Husband's departure to Virginia, and Husband does not explain how the court's general date range of 2004 to 2008 was inaccurate. The Family Court also used the language, "[i]n or about 2009," which connotes a general time period, and Husband does not dispute that he was in Hawai'i for at least part of 2008 and then moved to Virginia by 2009.  Moreover, even if the FOF were deemed erroneous, the error would be harmless because it is unclear (and Husband provides no explanation) as to how this alleged error

17

affected one of his "substantial rights" or in any way affected the outcome of the Family Court's decision. See HRE Rule 103(a); Schiller v. Schiller, 120 Hawai'i 283, 288, 205 P.3d 548, 553 (App. 2009) (stating that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected" (internal quotation marks omitted)).

Husband also challenges FOF 4, which states: "After numerous hearings with the last being on July 22, 2011, this Court entered an Amended Divorce Decree on October 26, 2011, awarding Mother with sole legal and physical custody of the children subject to Father's rights of reasonable visitation. This ruling was not appealed." Husband objects to the use of the language regarding "numerous hearings" because he states that "it implies that 'numerous hearings' were held on the issue of custody." However, it appears from the record that there were in fact multiple hearings leading up to the court's entry of the Amended Divorce Decree on October 26, 2011. Thus, this FOF is not clearly erroneous.

Husband challenges FOF 21, which states: "In short, the children are thriving in [Wife's] care. There is no evidence to the contrary." Husband contends that the children are not thriving because Wife is basically "permitting [the children's] relationship with [him] to deteriorate" and not allowing him enough input into their lives. However, "it is well settled that an appellate court will not pass upon issues dependent upon credibility of witnesses and the weight of the evidence; this is the province of the trial judge." Booth v. Booth, 90 Hawai'i

18

413, 416, 978 P.2d 851, 854 (1999) (citations, internal quotation marks, and brackets omitted). On the record of this case, we will not second-guess the evidentiary and credibility findings of the Family Court in this regard.

Finally, Husband challenges FOF 28's statement that "[o]n November 2, 2012, Father and his counsel failed to appear for trial." Husband claims that he did appear for trial because he was on the telephone, "but Judge Remegio [sic] did not permit him to participate be [sic] telephone." We cannot conclude that this FOF is clearly erroneous. The court's minutes from the hearing on November 2, 2012 state:

> Three calls at 11:11 a.m. for Daryl Stump and Attorney Sandra Lynch with no response. Ms. Lynch did call at 10:50 a.m. & said she was running late. It is now 25 minutes since her call. . . . No further indication as to why Ms. Lynch was not present. Defendant was not given permission to appear via telephone.

Accordingly, due to the foregoing, all of the Family Court's FOFs are affirmed.

## E. The Family Court's Conclusions of Law

Finally, Husband argues that the Family Court's COLs "are erroneous and do not properly state the law of Hawaii regarding modification of Orders regarding child custody and support." Husband appears to challenge all of the court's COLs; however, he specifically provides arguments for only four of them. Thus, Husband's objections to the remaining four COLs for which he provides no argument (COLs E-H) are deemed waived. See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

Husband objects to COLs A-C, stating that they "are in error as they do not state that the second prong of the determination involves a question of the best interests of the

19

child." COL A states that "[t]o warrant a modification of an existing child custody order, the Movant must show a substantial change in relevant circumstances." COL B states, in relevant part, that "[Husband] must show a substantial change in relevant circumstances since [the Family Court's] issuance of the Amended Divorce Decree." COL C states, in relevant part, that "[Husband] has failed to show a substantial change in relevant circumstances warranting a trial on the modification of the custodial arrangement."

As stated above, this court has held "[t]hat a person seeking a change of custody must show a material change of circumstances since the previous custody order, and must show that such a change of custody is in the best interest of the child." Nadeau, 10 Haw. App. at 121, 861 P.2d at 759; see In re Guardianship of Doe, 93 Hawai'i at 388, 4 P.3d at 522. Husband is correct in asserting that this is a two-part requirement. However, both requirements are necessary to warrant a change in custody. The Family Court concluded that Husband failed to meet the first part of the test and therefore did not address the second. The Family Court did not err regarding COLs A-C.

Finally, Husband objects to COL D, which states: "Consequently, based on the Court's October 3, 2012 Order, that the issue of requested tax exemptions is deferred pending the determination of child custody, [Husband's] request for tax exemptions is also denied." He argues that the Family Court "made no such determination [about tax exemptions] at the November 2, 2012 hearing on the record" and that Husband "has not yet resubmitted this issue to the Court for its consideration."

20

However, Husband's assertion that the Family Court erred by resolving the tax exemption issue is without merit.  The issue of tax exemptions was deferred pending a determination about child custody, and the child custody (visitation) issue was resolved at the November 2, 2012 hearing, thereby allowing the court to subsequently rule on the tax exemption issue.  As there was no change in custody or visitation, no corresponding change in tax exemptions was warranted.  Accordingly, and because Husband provides no authority to otherwise support his allegation of error, the Family Court's COL D is not wrong.

## VI.   Conclusion

For these reasons, we affirm the Family Court's October 29, 2012 and November 2, 2012 Orders denying Husband's Motion to Modify Judgment Pursuant to HRS § 580-47.

DATED: Honolulu, Hawai'i, April 30, 2014.

On the briefs:

Sandra D. Lynch
for Defendant-Appellant

Rebecca A. Copeland
for Plaintiff-Appellee

Chief Judge

Associate Judge

Associate Judge